**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**


| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 05-018 (JDB)** |
| | : | |
| **v.** | : | |
| | : | |
| **ROBERT E. QUINN and** | : | |
| **MICHAEL H. HOLLAND,** | : | |
| | : | |
| **Defendants.** | : | |


**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE INDICTMENT BECAUSE OF THE ALLEGED
INVALIDITY OF THE EXPORT ADMINISTRATION REGULATIONS
OR, IN THE ALTERNATIVE, TO DISMISS COUNT ONE OF THE INDICTMENT
AND STRIKE ALL REFERENCES TO THE EXPORT
ADMINISTRATION REGULATIONS IN THE REMAINDER OF THE INDICTMENT**


### Introduction

Defendants Robert Quinn and Michael Holland seek to dismiss the indictment, alleging

that it is premised on an unconstitutional extension of the lapsed Export Administration Act

("EAA"), 50 U.S.C. App. 2401 *et seq.* In the alternative, they have moved to dismiss Count One

of the indictment, which rests on the conspiracy prohibition in the Export Administration

Regulations ("EAR"), 15 C.F.R. Parts 730-774, and to strike all references to the EAR in the

remaining counts. The defendants premise their motion on a claim that Executive Order 13222,

which extended both the EAA and the EAR, is unconstitutional.

However, whether the President has the constitutional authority to extend a lapsed statute

by means of an executive order is not an issue before the Court. The indictment does not rely on

the EAA or on Section 1 of Executive Order 13222, which purports to extend the statute after its

congressionally mandated lapse. Instead, the indictment relies on the EAR and Section 2 of

Executive Order, which states that the EAR are to remain in force after the lapse of the EAA.

Section 2 of Executive Order 13222 is a proper exercise of the broad powers that the

International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, grants the

President.  Moreover, IEEPA is a constitutional delegation of authority to the executive branch,

particularly in the realm of foreign affairs.  Likewise, when the EAA was in effect and the EAR

were promulgated, the EAA represented a constitutional delegation of power.  The President's

extension of the EAR is an executive branch function that does not impinge on any of Congress'

prerogatives.  There is therefore no basis for dismissing the indictment or Count One of the

indictment; nor is there a basis for striking references to the EAR in the remaining counts.

## Counterstatement of the Legal Issue before the Court

In describing Executive Order 13222, the defendants' memorandum (at page 2) quotes

only from Section 1 of the Order, which provides that "the provisions of the [EAA] . . . shall be

carried out under this order so as to continue in full force and effect and amend, as necessary, the

export control system heretofore maintained by the [EAA]."  However, Section 2 of the Order

further provides, in pertinent part:

> All rules and regulations issued or continued in effect by the Secretary of Commerce
> under the authority of the [EAA], including those published in [the EAR], and all orders,
> regulations, licenses, and other forms of administrative action issued, taken, or continued
> in effect pursuant thereto, shall, until amended or revoked by the Secretary of Commerce,
> remain in full force and effect as if issued or taken pursuant to this order . . . .

The indictment nowhere cites the EAA as authority for any of the charges pending against

the defendants.[1]  In fact, the EAA has its own section creating criminal penalties for violations of

---

[1]  The only reference in the indictment to the EAA is in paragraph 13 of Count One,
where the indictment explains that the Secretary of Commerce, pursuant to authority granted by
the EAA, promulgated the EAR and that, since the lapse of the EAA, the EAR have remained in

the law – <u>see</u> 50 U.S.C. App. § 2410(b) – and the indictment does not allege that the defendants

contravened that provision.  The sole statute on which the indictment rests is IEEPA, with

references to the EAR as extended by Section 2 of Executive Order 13222.  Thus, the Court does

not need to decide here whether the extension of the EAA in Section 1 of Executive Order 13222

is constitutional or whether it runs afoul of the principles set forth in <u>Clinton v. City of New</u>

<u>York</u>, 524 U.S. 417 (1998), and <u>INS v. Chadha</u>, 462 U.S. 919 (1983).[2]

Instead, the real issues that the Court must decide are the following: First, whether IEEPA

is a constitutional delegation of authority to the executive branch; and, second, whether Section 2

of Executive Order 13222 is a proper exercise of the powers that IEEPA grants the president.[3]

---

force "under the provisions of IEEPA, by virtue of Executive Order 13222 . . . ."  Indictment,
Count One, ¶ 13.

   [2] It is important to note that, in <u>Wisconsin Project on Nuclear Arms Control v.
Department of Commerce</u>, 317 F3d 275 (D.C. Cir. 2003), the D.C. Circuit ruled that Executive
Order 13222 served to extend the EAA for purposes of applying a withholding exemption of the
Freedom of Information Act, 5 U.S.C. § 552(b)(3).  The D.C. Circuit decided <u>Wisconsin Project</u>
five years after the Supreme Court issued its ruling in <u>City of New York</u>, and Judge Randolph, in
his dissent, cites <u>Chadha</u>.  At least by implication, the majority in <u>Wisconsin Project</u> rejected the
position that the defendants advance here.

   [3] The defendants also argue that inclusion of Executive Order 13222 in the indictment is
improper because the executive order contains no prohibitions.  The government agrees that,
standing alone, Executive Order 13222 does not criminalize any conduct.  However, insofar as
the order gives effect to the provisions in the EAR that the defendants violated, it is properly part
of the indictment.

## Argument

### I.      IEEPA Represents a Constitutionally Sufficient Delegation of Power to the Executive Branch

As a general principle, "Congress generally cannot delegate its legislative power to another Branch." Mistretta v. United States, 488 U.S. 361, 372 (1989).  Nevertheless, "in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives." Id. "So long as Congress 'shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power.'" Id., quoting J.W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 406 (1928).  Congress may even delegate to the executive branch the power to define criminal conduct. Touby v. United States, 500 U.S. 160 (1991).  In addition, in the area of foreign affairs, the executive branch has "a degree of discretion from statutory restriction which would not be admissible were domestic affairs alone involved." United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 320 (1936).  As one court has observed:

> In the external sector of national life, Congress does not ordinarily bind the President's hands so tightly that he cannot respond promptly to changing conditions or the fluctuating demands of foreign policy.  Accordingly, when Congress uses far-reaching words in delegating authority to the President in the area of foreign relations, courts must assume, unless there is a specific contrary showing elsewhere in the legislative history, that the legislators contemplate that the President may and will make full use of that power in any manner not inconsistent with the provisions of the Act.

B-West Imports, Inc. v. United States, 75 F.3d 633, 636 (Fed. Cir. 1996).  Only twice has the Supreme Court invalidated a law on delegation grounds. Mistretta, 488 U.S. at 416 (Scalia, J.,

dissenting).

Congress' delegation of authority to the President in IEEPA is constitutional.  The statute

contains express limits on when the President may invoke its powers and exercise his

authorities.[4]  It also carefully delineates what his powers are.  See 50 U.S.C. § 1702.

In United States v. Arch Trading Co., 987 F.2d 1087 (4th Cir. 1993), the defendant

challenged its conviction, arguing that the former regulations restricting trade with and travel to

Iraq were invalid because Congress unconstitutionally delegated to the President the authority to

define criminal conduct in IEEPA.  987 F.2d at 1092.  After reviewing the various restrictions on

the scope of the Act and on the use of the President's powers, the Fourth Circuit concluded that

IEEPA "meets the standard of constraint applied in Touby" and was thus the product of a

constitutional delegation of power.  Id. at 1094.  See also United States v. Anvari-Hamedani, 378

F. Supp. 821, 827-30 (N.D. Ohio 2005) (in enacting IEEPA, "Congress has provided the

President with an intelligible principle sufficient to pass muster under the non-delegation

doctrine and has limited the President's authority to define criminal conduct in compliance with

Touby.").[5]

_____

[4]  See 50 U.S.C. § 1701(a) ("Any authority granted to the President by section 1702 of this title may be exercised to deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President declares a national emergency with respect to such threat.") and 50 U.S.C. § 1701(b) ("The authorities granted to the President . . . may only be exercised to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared for purposes of the chapter and may not be exercised for any other purpose.").

[5]  Although the indictment does not rest on the EAA, when that legislation was valid and the EAR were promulgated, the EAA, too, represented a lawful delegation of power to the Executive Branch.  See United States v. Bozarov, 974 F.2d 1037, 1044 (9th Cir. 1992) ("We therefore conclude that the fact the Secretary's [regulations] under the EAA . . . make it possible

## II.  Section 2 of Executive Order 13222 Is a Proper Exercise of the Broad Powers that IEEPA Grants the President

IEEPA gives "broad authority" to "the Executive when acting under this congressional grant of power." Dames & Moore v. Regan, 453 U.S. 654, 672 (1981) (upholding President's authority under IEEPA to nullify attachments against Iranian funds in U.S. banks and to suspend claims of American nationals against Iran and to terminate those claims through binding arbitration before an international tribunal). By its express terms, IEEPA gives the President the power "by means of instructions, licenses, or *otherwise* . . . [to] regulate . . . prevent or prohibit, any . . . exportation of . . . any property . . . by any person, or with respect to any property, subject to the jurisdiction of the United States." 50 U.S.C. § 1702(a)(1) (emphasis added). The ability to declare – as Section 2 of Executive Order 13222 does here – that pre-existing export regulations shall remain in effect after the lapse of their enabling legislation certainly falls within the ambit of this expansive grant of authority.

In addition, Congress has approved of the President's use of IEEPA as a means keeping the EAR in force during periods of lapse of the EAA. As the D.C. Circuit observed in Wisconsin Project, quoting from the legislative history of IEEPA:

> Should a lapse in the [EAA] occur, however, the authority of [IEEPA] could be used to continue the Export Administration Regulations in effect if, and to the extent that, the President declared a national emergency as a result of such lapse . . . .

317 F.3d at 282 (quoting H.R. Rep. No. 95-459, at 13 (1977). The EAA has lapsed several times since the enactment of IEEPA, and it also lapsed when IEEPA's predecessor statute was in

---

for criminal liability to be imposed does not mean that the EAA violates the nondelegation doctrine."). The EAA contains a highly detailed description of its purposes and reach. See, e.g., 50 U.S.C. App. §§ 2401 and 2402.

effect.  See United States v. Spawr Optical Research, Inc., 685 F.2d 1076, 1081 (9th Cir. 1982),

cert. denied, 461 U.S. 905 (1983) (upholding validity of EAR during period of EAA lapse and

noting that the EAA was extended three times during lapses under the Trading With the Enemy

Act ("TWEA"), 50 U.S.C. App. § 5(b), predecessor to IEEPA; quoting further from the

legislative history of IEEPA, the statement of Congressman Bingham that, "One of the reasons

why the Export Administration Act has been allowed to expire so many times is because there

was (theTWEA). . . .").[6]  Congress has been well aware that, with each lapse of the EAA, the

President has ordered the EAR to remain in force pursuant to IEEPA.  Yet it never has attempted

to stop this practice.  As the Supreme Court noted in Dames & Moore:

> "[A] systematic, unbroken, executive practice, long pursued to the knowledge of the
> Congress and never before questioned . . . may be treated as a gloss on 'Executive Power'
> vested in the President by § 1 of Art. II."  Past practice does not, by itself, create power,
> but "long-continued practice, known to and acquiesced in by Congress, would raise a
> presumption the [action] had been [taken] in pursuance of its consent . . . ."

453 U.S. at 686, quoting Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 610-11

(1952), and United States v. Midwest Oil Co., 236 U.S. 459, 474 (1915).

The defendants argue that Congress intended the EAR to lapse with the EAA.

Defendants' Memorandum at 9-10.  The authorities discussed above belie that contention.

Moreover, there is nothing in the EAA that states that the EAR should cease to be effective upon

the statute's lapse.  Instead, § 2420 of the most recent version of the Act states that all rules and

regulations issued under the authority of prior versions of the statute "which are in effect at the

time this Act takes effect shall continue in effect according to their terms until modified,

---

[6]  See also United States v. Mechanic, 809 F.2d 1111, 1112-14 (5th Cir. 1987) (upholding
constitutionality of extending EAR through IEEPA).

superseded, set aside, or revoked under this Act." 50 U.S.C. App. § 2420.  This provision reflects Congress' ratification of previous extensions of the EAR under IEEPA and under its predecessor, TWEA.

The defendants also assert, without authority, that Executive Order 13222 could not restore the EAR upon the lapse of the EAA.  Defendants' Memorandum at 10.  None of the cases that the defendants cite compels that conclusion.  City of New York, the case upon which they place most reliance, certainly does not invalidate Section 2 of Executive Order 13222.   The constitutional encroachment that City of New York disallowed was the grant to the President of "the unilateral power to change the text of duly enacted statutes", without first going through the ordinary practice of proposing legislation for consideration and passage by both houses of Congress.  524 U.S. at 447.  Section 2 of Executive Order 13222 leaves the EAA unchanged.  It alters or enacts no act of Congress.  All Section 2 of Executive Order 13222 does is to leave in place a promulgation of the executive branch.  It is merely an executive act that affects another executive act.  It results in no transgression of Article I or the doctrine of the separation of powers.

## Conclusion

For the foregoing reasons, the Court should deny the defendants' motion to dismiss the indictment or, alternatively, to dismiss Count One and strike all references to the EAR.

                                        Respectfully submitted,


                                        KENNETH L. WAINSTEIN
                                        D.C. Bar No. 451058
                                        United States Attorney


By:        _____/s/_____

                                        JAY I. BRATT
                                        Assistant United States Attorney
                                        Illinois Bar No. 6187361
                                        LAURA A. INGERSOLL
                                        Assistant United States Attorney
                                        Connecticut Bar No.306759
                                        Transnational and Major Crimes Section
                                        555 4th Street, NW, 11th Floor
                                        Washington, D.C.  20530
                                        (202) 353-3602 (AUSA Bratt)
                                        (202) 514-9549 (AUSA Ingersoll)
                                        jay.bratt@usdoj.gov
                                        laura.ingersoll@usdoj.gov

**<u>Certificate of Service</u>**

I, Jay I. Bratt, certify that I served a copy of the foregoing Government's Memorandum in Opposition to Defendants' Motion to Dismiss The Indictment Because of the Alleged Invalidity of the Export Administration Regulations or, in the Alternative, to Dismiss Count One of the Indictment and Strike All References to the Export Administration Regulations in the Remainder of the Indictment by electronic means on all counsel of record for defendants Quinn and Holland this 22nd day of September, 2005.

_____/s/_____
Jay I. Bratt